**Jay Lawrence HALPERIN,**
**Plaintiff–Appellant,**

v.

**ABACUS TECHNOLOGY**
**CORPORATION, Defendant–Appellee.**

No. 96–2349.

United States Court of Appeals,
Fourth Circuit.

Argued July 9, 1997.

Decided Sept. 18, 1997.

**ARGUED**: Alan Banov, Washington, DC, for Appellant. Gary Howard Simpson, Bethesda, MD, for Appellee.

Before WILKINS, HAMILTON, and WILLIAMS, Circuit Judges.

Affirmed by published opinion. Judge WILLIAMS wrote the opinion, in which Judge WILKINS and Judge HAMILTON joined.

## OPINION

WILLIAMS, Circuit Judge:

Jay Lawrence Halperin appeals the district court's grant of summary judgment to his former employer on his claims of employment discrimination under the Americans with Disabilities Act (ADA), see 42 U.S.C.A. § 12101 (West Supp.1997), and the Age Discrimination in Employment Act (ADEA), see 29 U.S.C.A. §§ 621–634 (West Supp.1997).[1] Halperin argues that summary judgment was inappropriate because he established a prima facie case of discrimination under both the ADA and the ADEA and because his employer's legitimate, nondiscriminatory reasons for terminating his employment were pretextual. We conclude that Halperin is neither a qualified individual with a disability nor the victim of intentional age discrimination. Accordingly, we affirm the judgment of the district court.

---

1. Halperin also brought a claim pursuant to the Maryland Workers' Compensation Act, see Md. Code Ann., Lab. & Empl. § 9–1105 (Michie 1991), which the district court dismissed without prejudice. The instant appeal does not concern this claim.

## I.

The facts, set forth in the light most favorable to Halperin, reveal the following. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986) (holding that the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor). Abacus Technology Corporation (Abacus) is a research and consulting firm based in Chevy Chase, Maryland. Abacus derives its income from its contracts with the federal government and from billing its consultants' time to these contracts. In March of 1992, Halperin was hired by Abacus to work as a computer consultant on a contract with the General Services Administration.

On May 31, 1994, Halperin injured his lower back while attempting to lift a computer at work. Halperin's doctor diagnosed his condition as a lumbar strain and recommended a course of guided physical therapy. As a result of his injury, Halperin, with the help of Catherine Williams, Abacus' Manager for Administrative Services, filed a workers' compensation claim. Finding that Halperin was temporarily disabled, the Maryland Workers' Compensation Commission approved and paid his claim, retroactive to June 9, 1994.

Despite his lower back injury, Halperin was able to return to work, missing only six days between May 31 and October 31, 1994. In early November, however, Halperin found it difficult to perform some of the physical functions of his job, including walking, sitting, standing, and lifting. On November 3, 1994, Halperin decided to take an extended leave from work to recuperate.[2]

In late December of 1994, Halperin's doctor cleared him to return to work with the restriction that he refrain from lifting more than 20 pounds. On January 4, 1995, Halperin met with Williams to discuss his transition back to work. Among other things, Halperin asked about the possibility of obtaining an ergonomically correct chair. After being assured that such a chair would be provided upon his return, Halperin met with Susan Suskin, his direct supervisor's supervisor.[3] Suskin stated that she was surprised to see Halperin because she neither knew that he was coming back to work nor had any work for him to do at the time. Nevertheless, the two discussed a couple of projects that he might work on, and Suskin suggested that he talk to his direct supervisor about them.

After meeting with Halperin, Suskin immediately informed William Magro, Abacus' Senior Vice President, that Halperin wanted to return to work but that she had no billable work for him at the time. Magro decided to terminate Halperin. After confirming that an employee on sick leave could be terminated if there was a lack of work, Magro verbally informed Halperin that he was being let go. Halperin was assured that his termination had nothing to do with his past performance. Instead, Magro emphasized that it was due to the "downturn in business" Abacus experienced during his absence,[4] (J.A. at 125), and the fact "that he did not know when [Halperin's] injury would permit [him] to return to work," (J.A. at 127).[5]

Halperin's testimony regarding his ability to return to work is inconsistent. In his deposition, Halperin stated that he would not have been able to return to work for an additional five months. However, in a sworn affidavit, filed in response to Abacus' motion for summary judgment, Halperin stated that he was "ready and willing to work" on January 4, 1995, (J.A. at 133), the day he visited Abacus to discuss his transition back to work.

---

**2.** During this time, Halperin used all of his remaining sick leave and vacation time. As a result, Halperin was required to take leave without pay.

**3.** Halperin's direct supervisor, Brian Dummett, was on sick leave.

**4.** Suskin also told Halperin that lack of work was the reason for his termination. However, when asked whether he could be rehired if Abacus received more work, Suskin responded that Abacus "might hire someone less expensive." (J.A. at 239.)

**5.** In addition to receiving two weeks severance pay, Halperin was told that he could apply for unemployment benefits. (J.A. at 125–26.)

Shortly after terminating Halperin, Abacus hired 36–year–old Galina Diggs. According to Halperin, who was by then 48 years old, Diggs was assigned to perform work similar to that which he had formerly performed. Halperin contends that his qualifications for the position were better than those of Diggs, but that Abacus hired her because she was younger and could be paid less. Brian Gallant, Diggs' supervisor, eventually recommended that she be discharged due to poor performance and that Halperin be rehired. Senior management rejected both recommendations.

On October 20, 1995, Halperin filed a complaint in the United States District Court for the District of Maryland, alleging that he was discharged by Abacus in violation of the ADA, *see* 42 U.S.C.A. § 12101, and the ADEA, *see* 29 U.S.C.A. §§ 621–634. Following a lengthy period of discovery, Abacus moved for summary judgment on both claims. After extensive briefing and oral argument, the district court granted Abacus' motion. In ruling on Halperin's ADA claim, the district court found that Halperin was not a"qualified individual with a disability" because he was not "able to meet the attendance requirements of the job." (J.A. at 587). In ruling on his ADEA claim, the district court found that Halperin could not establish that Abacus' legitimate, nondiscriminatory reasons for terminating his employment were pretextual. This appeal followed.

## II.

■ On appeal, Halperin contends that he established a prima facie case of discrimination under both the ADA and the ADEA, and that Abacus' legitimate, nondiscriminatory reasons for terminating his employment were pretextual. As a result, he argues that the district court erred in granting summary judgment to Abacus. We review de novo the district court's decision to grant Abacus summary judgment. *See Higgins v. E.I. DuPont de Nemours & Co.*, 863 F.2d 1162, 1167 (4th Cir.1988). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that·there is no genuine issue as to any material fact." *See* Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In deciding whether there is a genuine issue of material fact, the evidence of the nonmoving party is to be believed and all justifiable inferences must be drawn in his favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986).

■ ▪ Absent· direct evidence of discrimination, Halperin must satisfy the three-step proof scheme established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to prevail on his ADA and ADEA claims.[6] First, Halperin must establish, by a preponderance of the evidence, a prima facie case of discrimination. Once established, the burden shifts to Abacus to "rebut the presumption of discrimination by producing evidence that the plaintiff was [terminated] ... for a legitimate, nondiscriminatory reason." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). If Abacus meets its burden of production, the presumption raised by the prima facie case is rebutted and "drops from the case," *id.* at 255 n. 10, 101 S.Ct. at 1095 ,n. 10, and Halperin bears the ultimate burden of proving that he has been the victim of intentional discrimination, *see St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–11, 113 S.Ct. 2742, 2746–50, 125 L.Ed.2d

6. The *McDonnell Douglas* proof scheme is appropriate when, as here, the reason for the employee's discharge is disputed. *See Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 57–58 (4th Cir.1995) (noting that the *McDonnell Douglas* test is most appropriate when "the defendant disavows any reliance on discriminatory reasons for its adverse employment action"). We note, however, that although helpful, the *McDonnell Douglas* framework should not be applied in a "rigid, mechanized, or ritualistic" manner. *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). Rather, the test is "merely a means to fine-tune the presentation of proof and, more importantly, to sharpen the focus on the ultimate question—whether the plaintiff successfully demonstrated that the defendant intentionally discriminated against[him]." *Ennis*, 53 F.3d at 59.

407 (1993). With this framework in mind, we address Halperin's claims in turn.

## A.

Halperin first challenges the district court's decision to grant Abacus summary judgment on his ADA claim. The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual." 42 U.S.C.A. § 12112(a) (West 1995). Therefore, to establish a prima facie case under the ADA, Halperin must prove that (1) he has a disability; (2) he is otherwise qualified for the job in question; and (3) he was discharged solely because of his disability. *See Doe v. University of Maryland Med. Sys. Corp.*, 50 F.3d 1261, 1264–65 (4th Cir.1995); *see also Martinson v. Kinney Shoe Corp.*, 104 F.3d 683, 686 (4th Cir.1997); *Williams v. Channel Master Satellite Sys. Inc.*, 101 F.3d 346, 348 (4th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1844, 137 L.Ed.2d 1048 (1997).

Halperin contends that the district court erred in finding that he was not "otherwise qualified" for the job in question. Under the ADA, an individual is "otherwise qualified" if he,"with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C.A. § 12111(8). In other words, an individual is"otherwise qualified" only if he is "able to meet all of a program's requirements in spite of his handicap." *Southeastern Community College v. Davis*, 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979); *see also School Bd. of Nassau County, Fla. v. Arline*, 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1131 n. 17, 94 L.Ed.2d 307 (1987) ("In the employment context, an otherwise qualified person is one who can perform 'the essential functions' of the job in question.").[7] Halperin bears the burden of demonstrating that he is otherwise qualified. *See Tyndall v. National Educ. Ctrs.*, 31 F.3d 209, 213 (4th Cir.1994) (noting that the plaintiff "bears the burden of demonstrating that [he] could perform the essential functions of [his] job with reasonable accommodation").

As proof that he is qualified for the job in question, Halperin relies heavily on the fact that he never received a poor performance evaluation while working at Abacus. Because all justifiable inferences must be drawn in Halperin's favor, *see Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14, we will assume, and Abacus does not seriously dispute, that the quality of his performance when he was working was adequate. That fact standing alone, however, does not end our inquiry. "In addition to possessing the skills necessary to perform the job in question, an employee must be willing and able to demonstrate these skills by coming to work on a regular basis." *Tyndall*, 31 F.3d at 213; *see also Carr v. Reno*, 23 F.3d 525, 529 (D.C.Cir.1994) (holding that "coming to work regularly" is an "essential function"); *Jackson v. Veterans Admin.*, 22 F.3d 277, 279–80 (11th Cir.1994) (holding that an employee with a history of sporadic unpredictable absences was not otherwise qualified); *Law v. United States Postal Serv.*, 852 F.2d 1278, 1279–80 (Fed.Cir.1988) (holding that a regular and reliable level of attendance is a necessary element of most jobs).

It is undisputed that Halperin held a job that required his regular attendance at work. Despite this fact, Halperin missed 46 days of work during the six-month period prior to his termination. *Cf. Tyndall*, 31 F.3d at 213 (holding that an employee who "missed almost forty days of work during a seven-month period" was not otherwise qualified). Moreover, Halperin stated in his deposition that, as of the date he was terminated, he would have been unable to work for an

---

7. Although *Southeastern Community College v. Davis*, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979), and *School Bd. of Nassau County, Fla. v. Arline*, 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987), were decided under the Rehabilitation Act rather than the ADA, "we apply the same analysis to both." *Tyndall v. National Educ. Ctr., Inc.*, 31 F.3d 209, 213 n. 1 (4th Cir.1994) (noting that "the ADA expressly requires its provisions to be interpreted in a way that 'prevents imposition of inconsistent or conflicting standards for the same requirements' under the two statutes" (quoting 42 U.S.C.A. § 12117(b) (West 1995))); *see also Shafer v. Preston Mem'l Hosp.* 107 F.3d 274, 276 n. 3 (4th Cir.1997) (same).

additional five months. Because Halperin was unable to come to work on a regular basis, he was unable to satisfy any of the functions of the job in question, much less the essential ones. As a result, Halperin is not otherwise qualified and, therefore, not protected by the ADA. *Cf. Tyndall,* 31 F.3d at 213 (holding that an individual that "cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA").

 Halperin contends, however, that he could meet the attendance requirements of his job at Abacus. As support, Halperin points to his sworn affidavit, filed after Abacus moved for summary judgment, in which he states that he was "ready and willing to work" on January 4, 1995. Even if true, we nonetheless conclude that Halperin is not protected by the ADA. First, Halperin's sworn affidavit contradicts his prior deposition testimony.[8] It is well established that "[a] genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct." *Barwick v. Celotex Corp.,* 736 F.2d 946, 960 (4th Cir.1984); *see also Rohrbough v. Wyeth Labs., Inc.,* 916 F.2d 970, 975–76 (4th Cir. 1990) (disregarding affidavit of witness that contradicted witness' own prior sworn deposition testimony). The reason for this rule is simple: "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Barwick,* 736 F.2d at 960.

Second, even if Halperin is "otherwise qualified," which we doubt, he has not established the remaining elements of his prima facie case. In particular, Halperin failed to demonstrate that he has a disability.[9] According to the ADA:

> The term "disability" means, with respect to an individual—
>
> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment.

*See* 42 U.S.C.A. § 12102(2). Because Halperin does not contend that he was fired based on a record of disability, *see* 42 U.S.C.A. § 12102(2)(B), or that Abacus regarded him as disabled, *see* 42 U.S.C.A. § 12102(2)(C), we analyze Halperin's claim under subsection (A).

 To qualify as having a disability under subsection (A), Halperin must establish: (1) that his lower back injury is a "physical or mental impairment"; (2) that working is one of the "major life activities"; and, if so, (3) that his lower back injury "substantially limits" his ability to work. Halperin contends, and Abacus does not dispute, that his lower back injury is a physical impairment, *see Channel Master,* 101 F.3d at 349 (assuming without discussion that plaintiff's back injury was an impairment), and that working is a major life activity, *see Runnebaum v. NationsBank,* 123 F.3d 156, 170 (4th Cir. 1997) (en banc) (plurality opinion) (noting that "working is one of the major life activities of the ADA"); *Gupton v. Virginia,* 14 F.3d 203, 205 (4th Cir.1994) (same). Consequently, whether Halperin is disabled turns on whether his back injury substantially limits his ability to work.[10]

---

**8.** During oral arguments, counsel for Halperin was asked to identify which version of Halperin's testimony was correct. Regrettably, counsel only muddied the already murky waters by stating that it was not clear whether Halperin could have returned to work on January 4, 1995, but that Abacus should have given him the opportunity to find out.

**9.** Because Halperin failed to demonstrate that he has a disability, he necessarily failed to prove the third element of his prima facie case.

**10.** The ADA contemplates a case-by-case determination of whether a given impairment substantially limits one or more of the major life activities of an individual. *See Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.,* 53 F.3d 55, 59 (4th Cir.1995) (noting that "[t]he term 'disability' is specifically defined, for each of subparts (A), (B), and (C), 'with respect to [the] individual' "). Accordingly, a finding that Halperin is disabled must be made by determining whether *his* back injury substantially limits *his* ability to work.

The ADA does not define the term "substantially limits." When Congress does not expressly define a statutory term or phrase, a court should "normally construe it in accord with its ordinary or natural meaning." *Smith v. United States*, 508 U.S. 223, 228, 113 S.Ct. 2050, 2054, 124 L.Ed.2d 138 (1993). We have previously noted that the ordinary or natural meaning of "substantially limits" requires that an impairment *significantly restrict* an individual's ability to perform a major life activity.[11] *See Runnebaum*, 123 F.3d at 167 (stating that "the impairment must be significant, not merely trivial"); *Forrisi v. Bowen*, 794 F.2d 931, 933–34 (4th Cir.1986) (concluding that "[t]he statutory language, requiring a *substantial* limitation of a *major* life activity, emphasizes that the impairment must be a significant one").

In determining whether an impairment significantly restricts an individual's ability to perform a major life activity, we may "consider the nature and severity of the impairment, its duration or expected duration, and any permanent or long term impact." *Channel Master*, 101 F.3d at 349 (citation and internal quotation marks omitted). Based on the aforementioned factors, it is evident that the term "disability" does not include temporary medical conditions, *see, e.g.*, 29 C.F.R. pt. 1630, app. at 339 (1996) (noting that "temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities"),[12] even if those conditions require extended leaves of absence from work, *see, e.g.*, *McDonald v. Pennsylvania*, 62 F.3d 92, 95–96 (3d Cir.1995) (holding that a disabling, but transitory, abdominal injury was not a disability under the ADA); *Evans v. City of Dallas*, 861 F.2d 846, 852–53 (5th Cir.1988) (determining that a knee injury that required surgery was not "an impairment of continuing nature").

Moreover, when the major life activity at issue is working, the inability to perform a particular job does not constitute a substantial limitation. *See, e.g.*, *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 723 (2d Cir.1994) (holding that "[a]n impairment that disqualifies a person from only a narrow range of jobs is not considered a substantially limiting one"). Rather, "substantially limits" means that the impairment must "significantly restrict" an individual's ability to perform a wide range of jobs. *See, e.g.*, *Gupton*, 14 F.3d at 205 (holding that plaintiff had to show that her impairment foreclosed employment in her field); *Forrisi*, 794 F.2d at 935 (holding that a plaintiff's ability to work is substantially limited when his impairment forecloses "the type of employment involved"). Halperin bears the burden of demonstrating that his back injury substantially limits his ability to work.

Against this backdrop, we conclude that the evidence, viewed in the light most favorable to Halperin, does not support a finding that Halperin's back injury substantially limits his ability to work. To avoid the entry of summary judgment, Halperin was required to demonstrate through "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" that there was a genuine issue of material fact on each element on which he would carry the burden of proof at trial. *See* Fed.R.Civ.P. 56(c); *see also Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552 ("[T]he plain lan-

---

11. The EEOC, pursuant to its charge to issue regulations to carry out Title I of the ADA, *see* 42 U.S.C.A. § 12116 (West 1995), has similarly defined the term. According to the EEOC, "substantially limits" means:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or
> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.
>
> 29 C.F.R. § 1630.2(j)(1) (1996).

12. The EEOC interpretative guidelines are "not controlling upon the courts by reason of their authority." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986) (citations and internal quotation marks omitted). Nevertheless, where consistent with the ADA, they "do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Id.*

guage of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). Although Halperin bore the burden of demonstrating that his back injury substantially limited his ability to work, he simply failed to forecast, and the record does not contain, evidence that the injury to his lower back was significant.

The evidence in the record regarding the expected duration of his impairment strongly suggests that it was only transitory. For instance, the record contains an opinion from the Maryland Workers' Compensation Commission, finding that Halperin was only temporarily disabled. Furthermore, the record reveals that Halperin left work on November 3, 1994, and, according to his sworn affidavit, would have been able to return to his duties at Abacus on January 4, 1995, a period of only two months. *Cf. McDonald,* 62 F.3d at 95–96 (holding that a two-month absence from work to recover from surgery is an uncovered temporary disability); *Evans,* 861 F.2d at 852–53 (concluding that the term "individual with a handicap" does not include temporary medical conditions that require extended leaves from work).

As evidence that his injury significantly restricts his ability to work, Halperin notes that he was cleared to work with the restriction that he *refrain from lifting more than twenty pounds.*[13] For the reasons that follow, we find Halperin's argument to be without merit. First, we recently held, "as a matter of law, that a twenty-five pound lifting limitation—particularly when compared to an average person's abilities—does not constitute a significant restriction on one's ability to ... perform any ... major life activity." *Channel Master,* 101 F.3d at 349; *see also Aucutt v. Six Flags Over Mid-America,* 85 F.3d 1311, 1319 (8th Cir.1996) (holding that a twenty-five pound lifting re-

striction did not "significantly restrict" one of the major life activities). Second, and perhaps more telling, there is absolutely no indication that Halperin's lifting restriction significantly limits his ability to perform a wide range of jobs. *See Gupton,* 14 F.3d at 205 (holding that plaintiff had to show that her impairment foreclosed employment in her field). In fact, the record shows that Halperin could, and did, find comparable employment with a different employer. *See Forrisi,* 794 F.2d at 935 (holding that a plaintiff's ability to work is substantially limited only when his impairment forecloses "the type of employment involved"). Based on the record at summary judgment, no reasonable jury could conclude that Halperin's back injury significantly restricted his ability to work. *See Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510 (holding that summary judgment is appropriate "if the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party"). Accordingly, Halperin does not possess a disability for which he may claim relief from discrimination.

Applying the protections of the ADA to temporary impairments, such as the one presented here, would work a significant expansion of the Act. The ADA simply was not designed to protect the public from all adverse effects of ill-health and misfortune. Rather, the ADA was designed to "assure[ ] that truly disabled, but genuinely capable, individuals will not face discrimination in employment because of stereotypes about the insurmountability of their handicaps." *Forrisi,* 794 F.2d at 934. Extending the statutory protections available under the ADA to individuals with broken bones, sprained joints, sore muscles, infectious diseases, or other ailments that temporarily limit an individual's ability to work would trivialize this lofty objective.

So, depending on what version of Halperin's testimony is believed, *i.e.,* whether he was or was not able to return to work on the

---

**13.** Halperin also argues that Abacus had no way of knowing whether the injury to his back was only temporary at the time he was discharged. Even if true, that fact is of no import. The relevant inquiry in this case is not whether Abacus knew at the time Halperin was terminated that his injury was only temporary (and, therefore, not a substantial limitation on his ability to work), but whether Halperin's injury was in fact only temporary.

date he was discharged, Halperin is either not "otherwise qualified" or not "disabled" as those terms are used in the ADA. As a result, Halperin cannot establish a prima facie case of discrimination under the ADA. Accordingly, the district court did not. err in granting Abacus' motion for summary judgment.

### B.

■ Next, Halperin challenges the district court's decision to grant Abacus summary judgment on his claim under the ADEA. The ADEA provides that "[i]t shall be unlawful for an employer ... to discharge any individual ... because of such individual's age." 29 U.S.C.A. § 623(a)(1) (West Supp.1997). To establish a prima facie case under the ADEA, Halperin must prove that (1) he was in the age group protected by the ADEA; (2) he was discharged or demoted; (3) at the time of his discharge or demotion, he was performing his job at a level that met his employer's legitimate expectations; and (4) his discharge occurred under circumstances that raise a reasonable inference of unlawful age discrimination. *See Mitchell v. Data General Corp.*, 12 F.3d 1310, 1314–15 (4th Cir.1993).[14] The district court assumed, and Appellee concedes, that Halperin established a prima facie case of age discrimination. As a result, the burden shifted to Abacus to "rebut the presumption of discrimination by producing evidence that the plaintiff was [terminated] ... for a. legitimate, nondiscriminatory reason." *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094.

■ Abacus presented evidence that Halperin was terminated because of absenteeism and lack of work. The district court found, and .we agree, that these are legitimate, nondiscriminatory reasons to terminate an employee. Because Abacus met its burden of production, the presumption raised by the prima facie case is rebutted and "drops from the case." *Burdine*, 450 U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10. As a result, Halperin bears the ultimate burden of proving that he has been the victim of intentional age discrimination. *See St. Mary's Honor Ctr.*, 509 U.S. at 506–11, 113 S.Ct. at 2746–49; *see also Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 511 (4th Cir.1994) (noting that the straightforward question to be answered is whether the plaintiff has successfully demonstrated that he was the victim of age discrimination).

■ Halperin argues that he has met this burden by demonstrating that Abacus' legitimate, nondiscriminatory reasons for terminating his employment were pretextual. Halperin notes, among other things, that shortly after he was terminated Abacus hired the 36–year–old Diggs to perform work similar to that which he had performed. Halperin contends that this evidence demonstrates that there was work for him to do at Abacus and, therefore, Abacus' claim to the contrary is unworthy of credence. Even if there was work for Halperin, he cannot "prevail[ ] on the ultimate issue merely by demonstrating that the defendant's proffered explanation for the adverse action is not true." *Jiminez v. Mary Washington College*, 57 F.3d 369, 377 (4th Cir.1995). Rather, Halperin must prove *"both* that the reason was false, *and* that [age] discrimination was the real reason." *St. Mary's Honor Ctr.*, 509 U.S. at 515, 113 S.Ct. at 2752.[15]

---

**14.** Prior to the Supreme Court's decision in *O'Connor v. Consolidated Coin Caterers Corp.*, —— U.S. ——, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996), we also required that a plaintiff prove that he was replaced by someone outside the protected class. *See O'Connor v. Consolidated Coin Caterers Corp.*, 56 F.3d 542, 546 (1995). Although the district court erroneously included that requirement as a part of the prima facie case, the error was harmless because the district court assumed, for purposes of summary judgment, that Halperin established a prima facie case of age discrimination.

**15.** Although a plaintiff must prove that discrimination was the real reason, "[t]he factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993). In other words, "rejection of the defendant's proffered reasons is enough at law to *sustain* a finding of intentional discrimination." *Id.* at 511 n. 4, 113 S.Ct. at 2749 n. 4; *see*

To survive summary judgment, therefore, Halperin must have evidence from which a reasonable factfinder could conclude that Abacus engaged in intentional age discrimination. *See Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. We have previously held that "the mere fact of replacement by a younger employee is not dispositive of age discrimination." *Birkbeck,* 30 F.3d at 512 (noting .that the ADEA did not create "a strict seniority protection system"). Halperin argues, however, that replacement by a younger employee raises an inference of intentional age discrimination where the employer's legitimate, nondiscriminatory reason is lack of work. Even if true, we nonetheless conclude that Abacus was entitled to summary judgment. Halperin, as we explain below, failed to demonstrate that the other articulated reason Abacus gave for its challenged action, *i.e.,* "absenteeism," was false, much less a pretext for discrimination.[16]

Halperin argues that "absenteeism" was a pretext for discrimination because it was not given as the reason at the time he was terminated. *See, e.g., Briscoe v. Fred's Dollar Store, Inc.,* 24 F.3d 1026, 1028 (8th Cir. 1994) (noting that pretext may be established where reasons given for discharge at trial

differ substantially from those given at time of discharge). Halperin's argument, however, is belied by his own sworn affidavit, where he admits that during the meeting at which he was discharged "Magro *emphasized* the point that he did not know when [his] injury would permit [him] to return to work." (J.A. at 127 (emphasis added).) As a result, we conclude that Halperin failed to create ·a genuine issue of material fact as to the ultimate question of whether Abacus intentionally discriminated against him on the basis of his age. Because Abacus was entitled to judgment as a matter of law on Halperin's claim under the ADEA, the district court did not err in granting Abacus' motion for summary judgment.

### III.

For the foregoing reasons, the judgment of the district court is affirmed.

*AFFIRMED*

also *Jiminez v. Mary Washington College,* 57 F.3d 369, 378 (4th Cir.1995) (noting that although "rejection of the defendant's proffered reason— standing alone—does not *compel* the ultimate conclusion that the defendant unlawfully discriminated against the plaintiff, ... this factor may enter the calculus for determining this conclusion").

**16.** Halperin does not contend that this is a "mixed-motive" case. *See Russell v. Microdyne Corp.,* 65 F.3d 1229, 1236 (4th Cir.1995) (noting that "there are some instances in which dual motivations, one illegal and one legal, may exist and simultaneously motivate an' employer's actions"). Making the "distinction between mixed-motive and pretext cases ... is critical, because plaintiffs enjoy more favorable standards of liability in mixed-motive cases." *Fuller v. Phipps,* 67 F.3d 1137, 1141 (4th Cir.1995) (citation omitted); *see also Ezold v. Wolf, Block, Schorr and Solis–Cohen,* 983 F.2d 509, 522 (3d Cir.1992) ("Intentional discrimination in employment cases fall within one of two categories: 'pretext' cases and 'mixed-motive' cases."). To qualify as a mixed-motive case there must be *"direct evidence* that decisionmakers placed' substantial negative reliance on an illegitimate criterion." *Price Waterhouse v. Hopkins,* 490 U.S. 228, 277, 109 S.Ct. 1775, 1805, 104 L.Ed.2d 268 (1989) (O'Connor, J., concurring) (emphasis added); *see*

also *Seman v. Coplay Cement Co.,* 26 F.3d 428, 432 n. 6 (3d Cir.1994) (holding that the *McDonnell Douglas* pretext analysis, not mixed-motive analysis, applies where the plaintiff "has not presented any direct evidence that can fairly be said to prove'a mixed motive case"). Here, however, Halperin did not introduce any direct evidence of intentional age discrimination. Rather, he relied on circumstantial evidence and the proof scheme developed in *McDonnell Douglas. See, e.g., Weaver v. Casa Gallardo, Inc.,* 922 F.2d 1515, 1520 (11th Cir.1991) (noting that the plaintiff could have invoked the *Price Waterhouse* mixed-motive analysis by offering direct evidence of discrimination, but instead invoked the *McDonnell Douglas* pretext analysis by offering circumstantial evidence of discrimination); *cf. Fuller,* 67 F.3d at 1141 ("Most discrimination cases are pretext cases and will fall within th[e] traditional *McDonnell Douglas/Burdine* framework."). 'As a result, Halperin does not qualify for the more advantageous standards of liability applicable in mixed-motive cases. *See Price Waterhouse,* 490 U.S. at 258, 109 S.Ct. at 1795 (noting that the burden of persuasion shifts to the employer to prove, by a preponderance of the evidence, "that it would have made the same decision even if it had not taken the plaintiff's [age] into account").