**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

R. KENT WYLAND, JR.,
Plaintiff-Appellant,

v.

BODDIE-NOELL ENTERPRISES,
INCORPORATED,
Defendant-Appellee.

No. 98-1163

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
James C. Turk, District Judge.
(CA-95-436-R)

Submitted: October 27, 1998

Decided: November 17, 1998

Before LUTTIG, MICHAEL, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Terry N. Grimes, KING, FULGHUM, SNEAD, NIXON & GRIMES,
P.C., Roanoke, Virginia, for Appellant. A. Bruce Clarke, C. Matthew
Keen, OGLETREE, DEAKINS, NASH, SMOAK & STEWART,
P.C., Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

R. Kent Wyland, Jr., appeals from the district court's grant of summary judgment in favor of Defendant Boddie-Noell Enterprises, Inc. (Boddie-Noell), in Kent's action under the Americans with Disabilities Act (ADA), 42 U.S.C.A. §§ 12101-12213 (West 1995 & Supp. 1998). Finding no error, we affirm.

I.

Wyland began working for Boddie-Noell in 1983. In 1992, after being promoted numerous times, Wyland sought a promotion to a position as a Group Leader. Group Leaders are required to supervise the operation of Boddie-Noell franchises, which requires a great deal of driving and for which they are provided company cars. As part of the process of consideration for promotion to Group Leader, Boddie-Noell performed a driving records check. Boddie-Noell also performed a drug screen on Wyland, as required under Boddie-Noell's company policy for those seeking promotion to a management position. Wyland's driving record reflected numerous infractions, including several speeding violations. Wyland's drug screen tested positive for the use of several prescription drugs, which Wyland was taking for a back injury.

Boddie-Noell asked Wyland to provide a list of his prescriptions, and then sought the advise of a physician in order to determine whether Wyland's medications would affect his ability to drive a company vehicle. The physician indicated that the drugs Wyland was taking could impair his ability to operate a car. Boddie-Noell officers met with Wyland; at that meeting, Wyland stated that he did not need to be taking the medications and volunteered to stop taking them. Boddie-Noell requested that Wyland agree to periodic quarterly drug screening as a follow-up measure, to ensure that Wyland remained

2

able to operate a company vehicle safely. Wyland agreed to the quarterly follow-up testing. Subsequently, Boddie-Noell sought the advice of a medical provider for Boddie-Noell's Employee Assistance Program, who opined that Wyland would not pose a liability risk by driving if he discontinued the use of his prescription medications.

Boddie-Noell awarded Wyland the position of Group Leader in March 1993, and he was provided with a company car. Wyland appeared for, and passed, his first two quarterly drug screens in February and June of 1993. On Thursday, September 9, 1993, Boddie-Noell informed Wyland that he needed to appear for his third drug screen immediately. Wyland failed to take a drug screen that day, and did not report for a drug screen until Tuesday, September 14. Boddie-Noell policy requires that any employee who is asked to take a drug test must do so within three days of notification, and that failure to take the test within three days will result in termination. Wyland's drug screen was negative. However, Wyland met with a Boddie-Noell officer several days later and admitted that he failed to take the screen within the required three-day period. Boddie-Noell terminated Wyland for insubordination, pursuant to company policy.

II.

We review the district court's grant of summary judgment de novo. See Cline v. Wal-Mart Stores, Inc., 144 F.2d 294, 300 (4th Cir. 1998). Wyland cannot make out a prima facie case of discrimination under the ADA because he cannot show that he is a member of a protected class by virtue of his disability. See Halperin v. Abacus Tech. Corp., 128 F.3d 191, 196-97 (4th Cir. 1997).

In order to show that he is disabled, Wyland must show that he (1) suffers from a physical or mental impairment that substantially limits a major life activity; (2) has a record of such an impairment; or (3) that Boddie-Noell regarded him as having a physical or mental impairment that substantially limits a major life activity. See 42 U.S.C.A. § 12102(2). Wyland contends that even though he did not in fact have a disability, Boddie-Noell regarded him as having a disability because it viewed him as an abuser of prescription drugs. However, to show that he qualifies as an individual with a disability under this standard, Wyland must show not only that Boddie-Noell

3

regarded him as having a disability, but also that Boddie-Noell perceived the impairment to substantially limit a major life activity. See id.; Cline, 144 F.3d at 303.

Even assuming that Boddie-Noell regarded Wyland as having an impairment, Wyland cannot show that Boddie-Noell perceived the impairment, abuse of prescription drugs, as substantially limiting a major life activity. Wyland contends that the major life activity that was affected was working. Although working is a major life activity, see 29 C.F.R. § 1613.702(c) (1998), in order to prove that his ability to work has been substantially impaired, Wyland must show that Boddie-Noell considered his perceived disability to significantly restrict his ability to perform a broad class of jobs, not that it viewed him as only unable to perform a particular position. See Cline, 144 F.3d at 303-04; Burch v. Coca-Cola, 119 F.3d 305, 322-23 (5th Cir. 1997), cert. denied, ___ U.S. #6D6D 6D#, 66 U.S.L.W. 3364 (U.S. Jan. 20, 1998) (No. 97-791); Williams v. Channel Master Satellite Systems, 101 F.3d 346, 349 (4th Cir. 1996), cert. denied , ___ U.S. ___, 65 U.S.L.W. 3779 (U.S. May 27, 1997) (No. 96-1521); Gupton v. Virginia, 14 F.3d 203, 205 (4th Cir. 1994). Here, Boddie-Noell's concerns stemmed from Wyland's ability to operate a car safely, and only extended to Wyland's position as Group Leader, which required use of a company car. There is no evidence that Boddie-Noell viewed Wyland to be significantly restricted in a "broad class of jobs," and thus Wyland's claim on this basis must fail. See Williams, 101 F.3d at 349; Gupton, 14 F.3d at 205.*

To the extent that Wyland contends Boddie-Noell's requirement that he undergo quarterly drug screens in his position as a Group Leader is impermissible under the ADA, we note that employers may inquire about and test for prescription drug use if such inquiry and

_____

*To the extent that Wyland claims on appeal that "driving" is the major life activity that was significantly impaired, we note that driving is not a major life activity. See 29 C.F.R. § 1613.702(c); Bragdon v. Abbott, ___ U.S. ___, 66 U.S.L.W. 4601 (U.S. Jun. 25, 1998) (No. 97-156). Further, although Boddie-Noell had legitimate concerns about Wyland's ability to operate a company car and potential liability, Wyland offers little evidence that his ability to drive generally was significantly impaired.

4

testing is job related and necessary for a business purpose. <u>See</u> 42 U.S.C.A. § 12112(d)(4)(A); <u>EEOC v. Prevo's Family Market, Inc.</u>, 135 F.3d 1089, 1094 (6th Cir. 1998); <u>Roe v. Cheyenne Mountain Conference Resort, Inc.</u>, 124 F.3d 1221, 1226-31 (10th Cir. 1997). Boddie-Noell's inquiry into and testing of Wyland for prescription drug use was both job-related and necessary for a business purpose-- Boddie-Noell needed to ensure that Wyland was capable of driving the company car as required to perform his job as a Group Leader, and also needed to ensure the safety of the general public and protect itself from potential liability. <u>See Prevo's</u>, 135 F.3d at 1094.

We affirm the district court's grant of summary judgment in favor of Boddie-Noell. We dispense with oral argument because the facts and legal contentions are adequately set forth in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

5