James W. HOCKADAY, Plaintiff,

v.

Les BROWNLEE, Acting Secretary, U.S. Department of the Army, Joseph P. Hill, Nelson A. Cross, Lt. Col. John V. Guenther, and Col. Edward D. Miller, Jr., Commander, Fort Monroe. Defendants.

No. 03–CV–149.

United States District Court, E.D. Virginia, Newport News Division.

July 19, 2004.

James W. Hockaday, Newport News, VA, pro se.

David Michael Tichanski, Hampton, VA, for Plaintiff.

George M. Kelley, III, United States Attorney's Office, Norfolk, VA, for Defendants.

## OPINION AND FINAL ORDER

REBECCA BEACH SMITH, District Judge.

This matter is before the court on defendants' motion for partial dismissal, and for partial summary judgment. For the reasons set forth below, the motion is **GRANTED.**

### I. Factual and Procedural History

At all times relevant to this litigation, plaintiff James W. Hockaday was a civilian employee of the Department of the Army, and employed as a water treatment plant operator at the Big Bethel Water Treatment Plant in Hampton, Virginia. The Big Bethel plant is owned by the Department of the Army and supplies fresh water to Fort Monroe and Langley Air Force

Base. During the relevant periods, plaintiff's immediate supervisor at the Big Bethel plant, or "first-line" supervisor, was defendant Joseph P. Hill ("Hill"). Directly above defendant Hill in the administrative chain of command was defendant Nelson A. Cross, plaintiff's "second-line" supervisor. Plaintiff's "third-line" supervisor, defendant Lt. Col. John V. Guenther ("Guenther"), was the commanding officer of the Directorate of Public Works at Fort Monroe, the entity responsible for managing the plant. Col. Edward D. Miller, Jr., ("Miller") was the overall commander at Fort Monroe.

On August 18, 1999, plaintiff suffered an injury to his knee, tearing his left anterior cruciate ligament. On September 21, 1999, plaintiff underwent reconstructive knee surgery. After approximately forty-five days, plaintiff began physical therapy on his knee. Because of plaintiff's injury, he was temporarily physically unable to work.

On December 16, 2003, plaintiff received medical authorization to return to work beginning January 3, 2000, The authorization specified that plaintiff was not to climb a ladder, negotiate more than one flight of stairs, squat, kneel, or lift more than twenty-five pounds. Because plaintiff's normal job requirements involve some of these prohibited activities, plaintiff's employer accommodated him by assigning an additional employee to plaintiff's shifts, so that plaintiff would not have to work beyond his restrictions. Plaintiff returned to work on January 3, 2000.

On or about January 6, 2000, defendant Hill met with plaintiff regarding plaintiff's lifting restriction. Defendant Hill expressed concern that, in the event of an emergency, plaintiff would not be able to use a self-contained breathing apparatus, which weighs twenty-seven pounds, because plaintiff was restricted to lifting only twenty-five pounds. On or about January

11, 2000, defendant Hill and plaintiff met again, and Hill advised plaintiff that plaintiff could not return to work until he received a modification of his lifting restriction permitting him to lift at least twenty-seven pounds. Plaintiff indicated to Hill that plaintiff felt he needed this instruction in writing. After another conversation in which plaintiff was orally instructed not to return to work until his lifting restriction was altered, defendant Cross issued plaintiff a written memorandum stating the same. Having received the written memorandum, plaintiff stopped reporting to work.

On or about January 28, 2000, plaintiff delivered to the plant a new report from his physician which increased his lifting restrictions. On or about January 31, 2000, defendant Hill contacted plaintiff by telephone, and instructed plaintiff to return to work the next day. Plaintiff declined to return to work without a written directive. Plaintiff's supervisors declined to issue a written directive, and reiterated that plaintiff was expected back at work. Plaintiff did not return to work as orally directed.

In early February 2004, plaintiff met with an Equal Employment Opportunity ("EEO") counselor regarding possible violations of his civil and statutory rights. Plaintiff initiated an informal EEO complaint, alleging disability discrimination and reprisal. Defendants Hill and Cross received notification of plaintiff's informal EEO complaint on or about March 7, 2004. As this time, plaintiff still had not returned to work.

On March 8, 2004, defendant Cross signed a Notice of Proposed Suspension, recommending that plaintiff be suspended for five working days for failure to return to work as orally directed. On March 20, 2004, defendant Guenther issued a Decision on Proposed Suspension, suspending

plaintiff effective March 28, 2000, through April 1, 2000, and directing plaintiff to return to work on his next scheduled work day. On April 3, 2000, plaintiff's next scheduled work day, he returned to work at the Big Bethel plant.

On October 31, 2003, plaintiff filed the complaint in this case. Defendants filed an answer on January 15, 2004. On June 17, 2004, defendants filed the instant motion for partial dismissal, and for partial summary judgment. Plaintiff responded on June 29, 2004.[1] Defendants filed a reply on July 2, 2004. Accordingly, the motion is now ripe for review.[2]

## II. Analysis

The complaint alleges three counts: (1) disability discrimination, (2) retaliation, and (3) negligent supervision. All three counts are asserted against all defendants. Defendants move to dismiss Count III against all defendants, and to dismiss Counts I and II against all defendants except Acting Secretary Brownlee. Defendants further move that Acting Secretary Brownlee be granted summary judgment as to Counts I and II.

### A. Dismissal of Count III

Defendants seek to dismiss Count III, a claim of "negligent supervision," on two bases: (1) failure to state a claim under Virginia law, and (2) lack of subject matter jurisdiction. Because it is a federal court's obligation to examine subject matter jurisdiction before addressing the merits of a claim, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–102, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998), the court looks first to that issue.

The plaintiff has the burden of proving that subject matter jurisdiction exists. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir.1999). When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), the court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings. *Id.* The court should grant a Rule 12(b)(1) motion to dismiss only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. *Id.*

In order to bring a tort action against the United States, the Federal Tort Claims Act requires that a claimant "shall have first presented the claim to the appropriate Federal agency." 28 U.S.C. § 2675(a). "It is well-settled that the requirement of filing an administrative claim is jurisdictional and may not be waived." *Henderson v. United States*, 785 F.2d 121, 123 (4th Cir.1986).

Here, Count III of the complaint sets forth a somewhat nebulous claim for "negligent supervision." The complaint does not directly state under what statutory or precedential authority this claim is intended to be brought. Much of the language of Count III, however, suggests that it is intended as a tort claim. For example, Count III refers to "conduct, acts, and failures to act [that] would and did proximately result in emotional distress" to plaintiff (Compl.¶ 56), thus appearing to invoke the traditional tort elements of duty, breach, causation, and injury.

In their statement of undisputed material facts, defendants assert that plaintiff "has filed no administrative claim with the

---

1. On June 28, 2004, plaintiff filed a motion for leave to extend to June 29, 2004, the time for filing his response. The motion is **GRANTED**, and the court has considered plaintiff's response in deciding the motion for dismissal and summary judgment.

2. On July 9, 2004, defendants filed a motion to continue trial. Given the court's decision on the instant motion, the motion to continue is **MOOT**.

Department of the Army, alleging the commission of any tort, or making any tort claim related to the events recited in this Complaint." (Defs.' Mem. in Supp. ¶ 42.) Plaintiff's brief in opposition does not dispute this assertion, or respond in any way to defendants' characterization of Count III as a tort claim barred by federal sovereign immunity.[3] Accordingly, the court assumes that plaintiff admits that he did not in fact file an administrative claim with the Department of the Army. Local Civil Rule 56(B), United States District Court, Eastern District of Virginia ("[T]he Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.").

As plaintiff has not borne his burden of proving that jurisdiction exists, and the material jurisdictional facts regarding plaintiff's failure to file an administrative claim are not in dispute, Count III is **DISMISSED** for want of subject matter jurisdiction.

### B. Dismissal of the Individual Defendants

Defendants seek to dismiss Counts I and II against all defendants except Acting Secretary Brownlee. Defendants argue that the only proper defendant to a federal employment discrimination suit is the head of the relevant federal department or agency, and that all defendants other than Acting Secretary Brownlee must therefore be dismissed from this case.

A complaint should not be dismissed pursuant to Rule 12(b)(6) for failure to state a claim unless it appears to a certainty that the nonmoving party cannot prove any set of facts in support of its claim that would entitle it to relief. *Conley v. Gib-*

son, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The court must accept the complaint's factual allegations as true and view all allegations in a light most favorable to the nonmoving party. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

██ Two federal statutes provide a cause of action for disability discrimination: the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101–12113, and the Rehabilitation Act of 1973, 29 U.S.C. §§ 701–797. The ADA adopts the "powers, remedies, and procedures" of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–4 to 2000e–9, as its own. 42 U.S.C. § 12117(a). Similarly, the Rehabilitation Act adopts the "remedies, procedures, and rights" of Title VII. 29 U.S.C. § 794a(a)(1). Although Title VII permits suits against an "employer" within the meaning of that statute, it does not permit suits against individual defendants who are not employers, such as supervisors. *Lissau v. S. Food Serv., Inc.,* 159 F.3d 177, 180–81 (4th Cir.1998). Because the same standards apply to the ADA and the Rehabilitation Act, neither act permits suit against an individual defendant who is not an employer. *Baird ex rel. Baird v. Rose,* 192 F.3d 462, 472 (4th Cir.1999).

██ Here, the allegations of the complaint make clear that defendants Hill, Cross, Guenther, and Miller were plaintiff's supervisors, not his employers. (Compl. ¶¶ 1, 17, 19, 20.) As such, they are not proper defendants to plaintiff's claims of disability discrimination and retaliation. Accordingly, Count I and Count II are **DISMISSED** against defendants Hill,

---

**3.** Indeed, plaintiff's brief in opposition does not comment at all on plaintiff's Count III claim of negligent supervision, instead dis-

cussing only the Count I and II claims of disability discrimination and retaliation.

Cross, Guenther, and Miller for failure to state a claim.

### C. Motion for Summary Judgment

■ Counts I and II state claims of disability discrimination and retaliation, respectively, against. the sole remaining defendant, the Acting Secretary of the Department of the Army. Although the complaint purports to advance these claims under the ADA, that statute specifically excludes the federal government from its coverage. 42 U.S.C. § 12111(5)(B)(i). The Rehabilitation Act, by contrast, expressly applies to the federal government. 29 U.S.C. § 794(a) (prohibiting disability discrimination "under any program or activity conducted by any Executive agency"). As such, the Rehabilitation Act is "the exclusive means by which a plaintiff may raise claims against federal agencies relating to handicap discrimination." *Spence v. Straw,* 54 F.3d 196, 197 (3d Cir.1995), *cited with approval in Brown v. Henderson,* 6 Fed.Appx. 155, 156 (4th Cir. 2001). Because the Rehabilitation Act has adopted the remedies, procedures, and rights of Title VII, *see* 29 U.S.C. § 794a(a)(1), "the head of the department, agency, or unit, as appropriate, shall be the defendant" in any Rehabilitation Act suit against the federal government. 42 U.S.C. § 2000e–16(c).

■ Here, plaintiff's claims derive from his status as a civilian employee of the Department of the Army. As such, his cause of action against Acting Secretary Brownlee must arise under the Rehabilitation Act, not the ADA. Accordingly, this court will construe plaintiff's claims as advanced under the Rehabilitation Act, rather than the ADA. Because the standards used to determine whether an employer has discriminated under the Rehabilitation Act are the same standards applied under the ADA, 29 U.S.C. § 791(g), this correction does not affect the substantive merit of plaintiff's claims. *Myers v. Hose,* 50 F.3d 278, 281 ("[W]hether suit is filed ... under the Rehabilitation Act ... [or] under the ADA, the substantive standards for liability are the same.").

Summary judgment under Federal Rule of Civil Procedure 56 is appropriate only when the court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once a party has properly filed evidence supporting the summary judgment motion, the nonmoving party may not rest upon mere allegations in the pleadings, but must set forth specific facts illustrating genuine issues for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985). Moreover, the existence of a scintilla of evidence in support of the nonmoving party's position is insufficient. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. Rather, the evidence must be such that the fact-finder reasonably could find for the nonmoving party. *Id.*

### 1. Disability Discrimination

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination ... under any program or activity conducted by any Executive agency." 29 U.S.C. § 794(a). The act imposes upon agencies an obligation to "[m]ake

reasonable accommodation to the known physical or mental limitations of qualified ... employees with handicaps unless the accommodation would impose an undue hardship on the operation of the agency's program," 29 C.F.R. § 1614.102(a)(8).

In order to fall under the protections of the Rehabilitation Act, a claimant must have a disability. The term "disability," as used in the Rehabilitation Act and the ADA, means "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such impairment." 42 U.S.C. § 12102(2). In determining whether an impairment significantly restricts an individual's ability to perform a major life activity, a court may consider "the nature and severity of the impairment, its duration or expected duration, and any permanent or long term impact." *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 199 (4th Cir.1997). "Disability" does not include a temporary medical condition, even if the condition requires an extended leave of absence from work. *Id.* Thus, recuperation from surgery will generally not qualify as a disability, because "[a]n impairment simply cannot be a substantial limitation on a major life activity if it is expected to improve in a relatively short period of time." *Pollard v. High's of Baltimore, Inc.*, 281 F.3d 462, 468 (4th Cir.2002).

The abilities to lift a certain amount of weight, crawl, kneel, squat, or climb, are not major life activities. *See, e.g., id.* at 470 (holding that "restrictions that [plaintiff] not lift more than twenty-five pounds or bend repetitively.... are not evidence of a permanent impairment that substantially limits any major life activity"); *Williams v. Channel Master Satellite Sys., Inc.*, 101 F.3d 346, 349 (4th Cir.1996) (holding, "as a matter of law, that a twenty-five pound lifting limitation

... does not constitute a significant restriction on one's ability to lift, work, or perform any other major life activity"); *Petty v. Freightliner Corp.*, 123 F.Supp.2d 979, 982 (D.N.C.2000) (holding that restrictions on bending, stooping, and squatting do not significantly restrict a major life activity). Moreover, "when the major life activity at issue is working, the inability to perform a particular job does not constitute a substantial limitation." *Halperin*, 128 F.3d at 199. Rather, the impairment must "significantly restrict" an individual's ability to perform a wide range of jobs. *Id.*

Here, it is undisputed that plaintiff suffered a physical impairment: on August 18, 1999, plaintiff injured his left knee by tearing his anterior cruciate ligament. On September 21, 1999, plaintiff had reconstructive knee surgery. (Defs.' Mem. in Supp. Ex. 15 at 17.) For approximately forty-five days after plaintiff's surgery, his knee was immobilized in a rubber cast. (*Id.* at 19.) After the cast was removed, plaintiff began physical therapy, which he continued until about January 27, 2000. (*Id.* at 20.)

On December 16, 1999, plaintiff received medical authorization to return to work. (Defs.' Mem. in Supp. Ex. 8.) Plaintiff's physician, Dr. H.W. Trieshmann, indicated that plaintiff could resume work on January 3, 2000, but that he was prohibited from climbing a ladder, negotiating more than one flight of stairs, squatting, kneeling, or lifting more than twenty-five pounds. (*Id.*) On January 27, 2000, Dr. Trieshmann reported that plaintiff "is having excellent recovery from his ACL reconstruction," and "[h]is work duties will be increased." (Defs.' Mem. in Supp. Ex. 14 at 2.) At that time Dr. Trieshmann removed the bulk of defendant's work restrictions, with the exception that plaintiff would remain limited to "no more than 15

min. of ladder climbing, kneeling, or stooping." (*Id.*)

On March 21, 2000, Dr. Trieshmann again observed that plaintiff "is progressing well." (*Id.*) Dr. Trieshmann determined that plaintiff had suffered "a 20% partial permanent impairment" of the left knee. (*Id.*) He further authorized plaintiff "to resume full work duties with only mild limitations against repetitive stooping, crawling or climbing." (*Id.*)

Despite this improvement, as of August 2001, plaintiff still had difficulty with ladders, and suffered from pain and swelling in his knee. (Defs.' Mem. in Supp. Ex. 15 at 58–59.) Plaintiff expected then (*id.* at 59), and still expects today (Hockaday Aff. ¶ 15), that he will ultimately require total knee replacement surgery. Plaintiff testified to an Administrative Judge that knee replacement surgery would improve his lifestyle "greatly" within six months of the procedure, although it could not restore him to his pre-injury physical condition. (Defs.' Mem. in Supp. Ex. 15 at 60).

■■■ Considering the entire record in the light most favorable to plaintiff, the court must conclude that plaintiff is not an "individual with a disability" as contemplated by the Rehabilitation Act. In considering the nature and severity of plaintiff's impairment, its expected duration, and long term impact, *see Halperin*, 128 F.3d at 199, it is clear that plaintiff is not substantially impaired in a major life activity.[4] Although plaintiff has not and will not recover his pre-injury physical condition, his condition improved significantly with time and treatment, and reflected the promise of further improvement. Plaintiff remains limited in his ability to lift weights, climb ladders, kneel, and squat; however, these are not major life activities.

*See, e.g., Pollard*, 281 F.3d at 470; *Channel Master Satellite*, 101 F.3d at 349; *Petty*, 123 F.Supp.2d at 982.

Moreover, plaintiff was not substantially limited in the major life activity of working. Within six months of plaintiff's injury, he was cleared to return to work with restrictions. With certain accommodations made for his limited ability to lift weights, climb, kneel, and crawl, plaintiff was able to perform his normal job functions in a satisfactory manner. As reflected in plaintiff's employee evaluation reports subsequent to his recovery from surgery, plaintiff's overall job performance was rated as "successful," and plaintiff was described as "extremely competent in [his] job field." (Pl.'s Mem in Opp. Ex. A at 1–4.) Thus, the record does not even reflect that plaintiff's physical impairment rendered him unable to perform his own particular job, let alone that it significantly restricted his ability to perform a wide range of jobs.

Because the undisputed facts demonstrate that plaintiff is not "an individual with a disability" as defined by the Rehabilitation Act, defendant is entitled to judgment as a matter of law on the claim of disability discrimination. Accordingly, the court **GRANTS** defendant Brownlee's motion for summary judgment on Count I.

### 2. Retaliation

■■■ The Rehabilitation Act incorporates by reference § 12203(a) of the ADA, which provides in relevant part that "no person shall discriminate against an individual because such individual has opposed any act or practice made unlawful by this Act." 29 U.S.C. § 794(a). To sustain a suit for retaliation, it is not necessary that the plaintiff prove that the underlying claim of discrimination was true.

---

**4.** Plaintiff does not argue that he either had a record of substantial impairment in a major life activity, or was regarded by his employer as having such impairment. *See* 42 U.S.C. § 12102(2)(B)-(C). Moreover, there is no evidence in the record to support either claim.

*Balazs v. Liebenthal,* 32 F.3d 151, 158 (4th Cir.1994). Rather, plaintiff must establish a prima facie claim by demonstrating that (1) plaintiff engaged in protected activity, such as filing an Equal Employment Opportunity complaint; (2) the employer took adverse employment action against plaintiff; and (3) the adverse action and protected activity are causally connected. *Hooven–Lewis v. Caldera,* 249 F.3d 259, 272 (4th Cir.2001). Normally, "very little evidence" of a causal connection is required to establish a prima facie case, and mere temporal proximity between the filing of a discrimination charge and adverse employment action is sufficient. *Tinsley v. First Union Nat'l Bank,* 155 F.3d 435, 443 (4th Cir.1998).

█ Once the plaintiff has established a prima facie case, the burden shifts to the defendant to produce evidence of a legitimate nondiscriminatory reason for the adverse employment action. *Smith v. First Union Nat'l Bank,* 202 F.3d 234, 248 (4th Cir.2000). If the defendant meets this burden of production, the plaintiff must then come forward with evidence that the reasons given were a mere pretext for discrimination. *Id.* at 249. Thus, to survive a motion for summary judgment after the defendant has met his burden of production, the plaintiff must have developed some evidence on which a juror could reasonably base a finding that discrimination motivated the challenged employment action. *Vaughan v. MetraHealth Cos.,* 145 F.3d 197, 202 (4th Cir.1998).

█ Here, it is undisputed that on February 4, 2004, plaintiff met with an EEO counselor. (Defs.' Mem. in Supp. Exs. 21–22.) This is unquestionably protected activity capable of satisfying the first prong of a prima facie case. It is also undisputed that plaintiff's first— and second-line supervisors, defendants Hill and Cross, received notification of plaintiff's informal EEO complaint on or about March 7, 2004 (*id.* Ex. 26), and that on March 8, 2004, defendant Cross signed a Notice of Proposed Suspension, recommending that plaintiff be suspended for five working days for failure to return to work as orally directed (*id.* Ex. 27). On March 20, 2004, defendant Guenther issued a Decision on Proposed Suspension, implementing the suspension of plaintiff for five working days. (*Id.* Ex. 30.) Because a suspension can be considered an adverse employment action, and because plaintiff's protected activity and the suspension are in close temporal proximity, the second and third prongs of plaintiff's prima facie case are met here.

█ However, defendant has met his burden of producing evidence of a legitimate nondiscriminatory reason for the suspension: namely, that plaintiff was suspended for failure to report to work as directed. Both the Notice of Proposed Suspension and Decision on Proposed Suspension speak solely to this issue. (Defs.' Mem. in Supp. Exs. 27, 30.) The Department of the Army, like any employer, has generally applicable policies concerning unauthorized absences. (*Id.* Ex. 33.)

Plaintiff does not dispute that he received oral directions to return to work on or about February 1 and 2, 2000. (Defs.' Mem. in Supp. Ex. 15 at 41–42.) Plaintiff declined to return to work without a written order to that effect. (*Id.*) It is similarly uncontroverted that at the time of plaintiff's suspension, he had not yet returned to work as orally directed.

Because defendant has rebutted plaintiff's prima facie case, defendant must be granted summary judgment unless plaintiff has developed some evidence on which a juror could reasonably find that the proffered rebuttal is mere pretext, and that disability discrimination actually motivated the challenged employment action. *Smith,* 202 F.3d at 249; *Vaughan,* 145 F.3d at

202. Viewing the entire record in the light most favorable to plaintiff, there is no such evidence, and defendant is entitled to judgment as a matter of law. Accordingly, the court **GRANTS** defendant Brownlee's motion for summary judgment on Count II.

### III. Conclusion

For the reasons set forth above, defendants' dispositive motions are **GRANTED**. Count III is **DISMISSED** for lack of subject matter jurisdiction. Counts I and II are **DISMISSED** against defendants Hill, Cross, Guenther, and Miller for failure to state a claim. The court **GRANTS** defendant Brownlee summary judgment on Counts I and II.

**IT IS SO ORDERED.**