**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

BRENDA MCCLURE,
Plaintiff-Appellant,

v.

No. 98-2143

TOGO D. WEST, Secretary of the
United States Department of the
Army,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CA-97-1806-A)

Submitted: March 16, 1999

Decided: June 29, 1999

Before NIEMEYER and LUTTIG, Circuit Judges, and HALL,
Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Michael J. Beattie, Alexandria, Virginia, for Appellant. Major
Edward J. Martin, Litigation Division, DEPARTMENT OF THE
ARMY, Arlington, Virginia; Helen F. Fahey, United States Attorney,
Thomas M. Ray, Special Assistant United States Attorney, Alexan-
dria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Brenda McClure appeals the district court's judgment granting summary judgment to the Appellee and dismissing McClure's complaint. In February 1998, McClure filed an amended complaint under the Rehabilitation Act of 1973, 29 U.S.C.A. §§ 701 to 797b (West 1999) ("Act"), against her employer, Togo West, Secretary of the Army ("Army"), alleging that the Army did not reasonably accommodate McClure's disability. McClure claimed she became disabled when chemicals and other substances were dispersed during renovations to her office space. The Army claims that McClure did not establish a prima facie case under the Act. Finding no reversible error, we affirm.

McClure began working for the Army as a military personnel clerk in 1985 and received a series of promotions. In 1991, after receiving three years of training, McClure was reassigned to the position of computer programmer. In 1993, the building in which McClure worked, the Hoffman II building, underwent substantial renovations. During this renovation period, McClure continued to work in her assigned work area on the eighth floor, but began to develop allergies. She received treatment from an allergist, Dr. Craig, and was prescribed a number of medications. At times, McClure suffered from head and nasal congestion, headaches, and breathing problems and often missed work. McClure also reported that the medications made her drowsy.

Craig diagnosed McClure as having allergic rhinitis as a result of exposure to mold at the workplace and reactive airway disorder or asthma. He opined that McClure's symptoms were primarily associated with the renovations at her workplace. Craig noted in support of this conclusion that McClure's symptoms manifested at the workplace, but subsided once she got home and did not occur on week-

2

ends. Craig further opined McClure could return to the eighth floor of the Hoffman II building if it were adequately clean and ventilated and without ongoing renovations, tobacco smoke or strong perfumes and colognes.

On February 28, 1995, McClure filed for workers' compensation for sick leave utilized since May 1993. She claimed that her working conditions caused and aggravated her illness. Almost immediately thereafter, on March 3, 1995, McClure was reassigned to another office in the Hoffman II building on the first floor. During her reassignment to the first floor office space, McClure never complained to her supervisors about the air quality or exhibited symptoms that suggested a reaction to chemicals or other substances. McClure became seriously ill while at work on one occasion and had to be taken to the hospital. That was caused by an allergic reaction to Lorabid, a prescribed medication.

In July 1995, a personnel employee recommended that McClure remain in the first floor area to fill a vacated position. McClure agreed to this change in assignment. However, a permanent transfer to the first floor was denied and McClure was instructed to return to the eighth floor. McClure refused to return to the eighth floor and went on leave without pay on September 22, 1995, pending resolution of her claim for workers' compensation benefits. She claimed that she had a disability that could be accommodated by permitting her to work at home or at another location outside of the Hoffman II building.

In October 1995, McClure was advised that she would receive workers' compensation benefits. In July 1996, McClure was advised that her benefits would terminate because the condition causing her illness was resolved and any further disability was not related to the working conditions.* In November 1996, based on the termination of

_____

*This decision was based upon opinions and diagnoses offered by three physicians who examined McClure. Dr. Putnam, a pulmonologist, found no evidence of asthma or destructive airway disease. He stated that he did not believe that her workplace exposure was related to her symptoms, but recommended further diagnosis by an immunologist or aller-

3

benefits, the Army advised McClure that she should return to work. If McClure refused to return, the Army advised her that she was to provide acceptable justification or face disciplinary action.

McClure did not return to work. She contacted an Equal Employment Opportunity Counselor to allege that she was being discriminated against based upon her disability. McClure suggested that the problem could be corrected if she were permitted to work at home or transferred to a "clean" building. The Army contended that McClure's job could not be done at home because it required working in teams and in a secure environment. Such a reassignment, according to the Army, would also involve modifying other employees' duties. The Army also contended that there were no positions for McClure outside the Hoffman II building.

In September 1997, McClure was informed by her supervisor that a review of medical evidence and air quality findings indicated that her workplace did not constitute a health risk. McClure was also informed that her work-space was moved to an enclosed area with a separate air conditioner/heater, an air cleaner, and no partitions. She was instructed to return to work on October 20, 1997, or be considered absent without leave. By letter dated November 3, 1997, McClure informed the Army that she was not returning to work unless the Hoffman II building was cleaned. Instead of returning to work, McClure accepted employment at a private employer located closer to home. She did not have her physician approve her new work environment nor is there any evidence regarding the steps, if any, McClure took to insure that her new place of employment would not present a health risk.

Meanwhile, a series of tests and surveys were conducted on McClure's eighth floor work-space to determine the air quality. In

_____

gist. Dr. Ein, an allergist, stated that McClure had rhinitis and sinusitis that was subjectively severe but objectively mild. Ein found that all tests for pollens and allergic molds were non-reactive. Although he suggested that McClure return to work, he did not offer an opinion as to the cause of her symptoms. Dr. Smith, an allergist and immunologist, who, in addition to examining McClure, reviewed the medical evidence, found that McClure's symptoms did not relate to her past workplace exposure.

December 1994, the work-space was found to have inadequate ventilation and an excessive fungal level. A December 1995 survey showed that there was a lack of significant air flow to the work-space, but the fungal level was low and the total dust level was nearly non-detectable. The survey included a recommendation that more outside air be provided to the work-space. A June 1996 survey showed that ventilation needed to be improved, but in all other respects, the work-space was found to be typical of office environments. An April 1997 survey showed that the ventilation system still needed improvement in order to improve the temperature and decrease the presence of carbon monoxide, but the presence of fungi and microbes was low.

Based on the April 1997 survey and a consultation with persons conducting the survey, the Army decided that window fan coil units, which were generally turned off by employees working near the units, were to remain on in order to maximize the quantity of outside air introduced into the work-space and to reduce carbon monoxide levels.

The district court found that McClure did not present any evidence that she was disabled outside of the original eighth floor work environment in the Hoffman II building. The court further found that there was no evidence that McClure could not function in any office environment. The court also found that the Army accommodated McClure's condition beyond reasonable expectations.

We review de novo the district court's decision to grant the Army summary judgment. See Halperin v. Abacus Tech. Corp., 128 F.3d 191, 196 (4th Cir. 1997). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in her favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

We apply the familiar proof scheme developed in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), to claims brought under the Rehabilitation Act. See Ennis v. National Ass'n of Business & Educ. Radio, Inc., 53 F.3d 55, 57-58 (4th Cir. 1995). Under that

5

scheme, the plaintiff must first establish a prima facie case that creates a presumption of discrimination. The burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged employment decision. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993).

To establish a prima facie case under the Rehabilitation Act, McClure must show that she has a disability, is otherwise qualified for the job, and that she was excluded from employment or a job benefit because of her disability. See Doe v. University of Md. Med. Sys. Corp., 50 F.3d 1261, 1265 (4th Cir. 1995). We find that McClure failed to establish a prima facie case.

We agree with the district court that McClure failed to establish that she was disabled outside of the eighth floor Hoffman II environment as it existed during renovations in February 1995. An individual with a disability is a person who has a physical or mental impairment which substantially limits one or more of her major life activities. See 29 U.S.C.A. § 705(20)(B)(i) (West 1999). A major life activity refers to basic functions, such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(h)(2)(i) (1998).

> The following factors should be considered in determining whether an individual is substantially limited in a major life activity:
>
> (i) The nature and severity of the impairment;
>
> (ii) The duration or expected duration of the impairment; and
>
> (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2). The medical evidence shows that if McClure was ever substantially limited, it was only when she was working on the eighth floor of the Hoffman II building during renova-

6

tions. The severity of the impairment subsided once she left the eighth floor. So long as she was not working in that environment, McClure was not suffering from an impairment that limited life activities. She was able to work on the first floor of the Hoffman II building without an adverse reaction related to the environment. McClure also accepted employment elsewhere without any documented attempt to survey the workplace environment for the possibility of health risks. Furthermore, air quality surveys showed a decrease in fungi and microbes in the eighth floor area leading to the conclusion that it was unlikely that the eighth floor continued to pose a health risk. There is no evidence that her new eighth floor office would have caused the type of health problems that occurred in the past.

We also find that other than McClure's own contentions, there was no evidence that McClure's job could be performed at home or at another location or that she could be transferred to another position for which she was qualified. Furthermore, the Army took several reasonable steps to accommodate McClure. Her work-space was moved to an enclosed area, she was provided an air conditioner and air filter, and a policy was instituted whereby all eighth floor air units were to remain on during work hours. There was no evidence that McClure would have recurring symptoms in her new office space or be unable to perform her job. Accordingly, we find that McClure failed to establish a genuine issue as to any material fact and the district court judgment granting summary judgment was proper.

We affirm the judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid in the decisional process.

<u>AFFIRMED</u>

7