UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CAROLYN HANSBROUGH,
Plaintiff-Appellant,

v.

MARY FRANCES COWAN; JAMES M.
BURNS, M.D.,
Defendants-Appellees.

No. 97-2633

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-96-1723-A)

Submitted: October 27, 1998

Decided: November 23, 1998

Before ERVIN, WILKINS, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Thomas Michael Curtis, Alexandria, Virginia, for Appellant. Mark L.
Earley, Attorney General of Virginia, Mary E. Shea, Assistant Attor-
ney General, Richmond, Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

Carolyn Hansbrough appeals the district court order granting summary judgment to the Defendants and dismissing her civil rights action. Hansbrough, a former public health nurse for the Fauquier County Health Department, alleged she raised concerns to her supervisors and co-workers about certain health and safety issues at the clinic and also filed a complaint with the Department of Labor and Industry. Hansbrough alleged she was then terminated and a report questioning her fitness for the nursing profession was filed with the Department of Health Professions in violation of her First Amendment rights. Finding no reversible error, we affirm.

In July 1994, Hansbrough was hired as a public health nurse for the Fauquier County Health Department. Her direct supervisors were Dr. James M. Burns, District Director, and Mary Frances Richmond (then Cowan), Nurse Supervisor. Hansbrough was hired for a six month probationary period, during which her performance was reviewed and evaluated.

During her probationary period, Hansbrough raised numerous concerns to co-workers and her supervisors regarding the safety and health conditions of the department. Her complaints included: (1) the failure to provide the staff with tuberculosis respirators during screening of patients; (2) the failure to use vacutainers rather than drawing blood samples by syringe; (3) the failure to repair or replace a leaking autoclave used to sterilize medical instruments; (4) the failure to follow standard protocol with regard to sharps containers; (5) failure to designate clean areas from contaminated work areas; (6) the failure to provide bleach bottles for sterilization; and (7) the failure to prevent contamination of cleaned speculums with dirty wash water and urine specimens that were dumped into the wash sink drain.

Meanwhile, staff nurses notified Richmond of Hansbrough's errors and work habits. Hansbrough was observed spending hours copying patient handouts that could have been ordered through the clinic nurse. She was also observed by staff nurses having difficulty retaining information and needed to be reminded of the needs of new

2

patients to a family planning clinic and the protocol for abnormal pap follow-up review, even though she was thoroughly trained in these areas. Hansbrough also failed to make an entry noting a patient's appointment in the appointment book. On November 8, 1994, Richmond advised Hansbrough that she was in danger of not successfully completing her probationary period.

After that discussion, Hansbrough was discovered to have made numerous erroneous entries on a patient's chart, including the wrong blood type. Hansbrough admitted to making all of the erroneous entries except for the wrong blood type. On November 18, 1994, she was again advised by Richmond that she faced termination. Three days later, Hansbrough contacted the Department of Labor and Industry (the "Department of Labor") by telephone and made several complaints regarding the alleged health and safety violations.

It was thereafter brought to Richmond's attention that Hansbrough violated protocol by disclosing the name of a male patient with a sexually transmitted disease to a female patient. When the matter first arose, Hansbrough was instructed to tell the female patient's regular nurse about the situation. Hansbrough instead contacted the female patient herself.

On December 7, 1994, prior to the conclusion of the probationary period, Hansbrough was terminated by Richmond and Burns. According to Richmond, several work-related problems arose which led her to conclude that Hansbrough was not going to adjust satisfactorily to her position. On or about December 12, 1994, Hansbrough filed her written complaint with the Department of Labor raising her various health and safety concerns.

Richmond determined that her reading of Va. Code Ann. § 54.1-2906 (Michie 1998) obligated her to report the decision to terminate Hansbrough to the Virginia Department of Health Professions (the "DHP")[1] and Burns agreed. On December 24, 1994, Richmond made

_____

[1] Va. Code § 54.1-2906 provides, in relevant part, as follows:

> A. The chief administrative officer and the chief of staff of every hospital or other health care institution in the Commonwealth

a report concerning Hansbrough to the DHP.**2**

On January 3, 1995, an inspector with the Department of Labor conducted a surprise inspection of the health clinic. There was no evidence that either Richmond or Burns were aware of Hansbrough's complaints to the Department prior to this inspection. The inspector concluded that Hansbrough's complaints were either not supported by his inspection or not health and safety violations. For instance, the inspector found that tuberculosis respirators were available, sharps containers were handled appropriately, vacutainers were available (but not the sole appropriate method for drawing blood), the autoclave was not leaking to a significant degree, and a clean area was available for employees. The inspector did not recommend any citations be issued for any of Hansbrough's complaints. The inspector did recommend issuance of citations for several deficiencies in record keeping and paperwork necessary to communicate programs to employees.

The district court found that Hansbrough did not engage in speech concerning a legitimate public concern when she complained to co-workers, supervisors and the Department of Labor and that her speech was not a substantial factor in her termination.

We review de novo the district court's decision to grant Defendants summary judgment. See Halperin v. Abacus Tech. Corp., 128 F.3d 191, 196 (4th Cir. 1997). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genu-

_____

> shall report to the appropriate board the following information regarding any person licensed by a health regulatory board unless exempted under subsection D:
>
> 3. Any disciplinary action, including but not limited to denial or termination of employment, denial or termination of privileges or restriction of privileges, while under investigation or during disciplinary proceedings, taken or begun by the institution as a result of conduct involving professional ethics, professional incompetence, moral turpitude, or substance abuse.

**2** After an investigation, the DHP chose not to take any action against Hansbrough.

4

ine issue as to any material fact." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In order to demonstrate that her supervisors retaliated against her for exercising her free speech rights, Hansbrough must make a prima facie showing that her speech involved a matter of public concern, that her interest in commenting on the matter outweighed the employer's interest in promoting efficiency, and that it was a substantial or motivating factor in the adverse employment decisions. See Hughes v. Bedsole, 48 F.3d 1376, 1385 (4th Cir. 1995). We need not address whether Hansbrough's speech concerned a matter of public concern if we conclude that it was not a substantial or motivating factor in her termination or the report filed with the DHP. Id. at 1386.

With regard to Hansbrough's complaints to co-workers and supervisors, Hansbrough contends that the temporal proximity of the adverse employment decisions and the post-hoc rationale for her termination create an inference that her termination was due to her complaints. There is no evidence in the record to support Hansbrough's contention that the reasons given by the employer for her termination were not articulated until after her termination. She was warned on two separate occasions, once in writing, that she was in danger of not successfully completing her probationary period. Hansbrough was informed that it was noted that she was having difficulty retaining information, that it appeared she was not reading her training materials, and that she made erroneous entries to a patient's chart.[3]

Temporal proximity alone is insufficient to create a genuine issue of material fact. The fact that Hansbrough's termination and the filing of a report with the DHP followed her conduct does not, by itself, indicate that her conduct was a substantial or motivating factor for her employer. See Hughes, 48 F.3d at 1387-88; see also Bailey v. Floyd County Bd. of Educ., 106 F.3d 135, 145 (6th Cir. 1997) (employee

_____

[3] The fact that the DHP chose not to take any action against Hansbrough is not relevant to the issue of whether there were legitimate reasons to terminate Hansbrough's employment.

5

must link the speech in question to the adverse employment decision). We note there was no link between Hansbrough's filing of the complaint with the Department of Labor and the adverse employment decisions because there was no evidence that either of her supervisors was aware of the complaint until after the adverse employment decisions were made.

Thus, we conclude that Hansbrough failed to show that her conduct was a substantial or motivating factor for her supervisors when making the adverse employment decisions. We therefore affirm the order of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

6