**CORRECTED OPINION**

**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JUDY L. SIMMONS,
Defendant-Appellant,

v.

KATRINA WOODARD, as
Administratrix of the Estate of

No. 99-1579

Roger J. Moore,
Defendant-Appellee,

and

PAN-AMERICAN ASSURANCE COMPANY,
Plaintiff.

Appeal from the United States District Court
for the Southern District of West Virginia, at Huntington.
Robert C. Chambers, District Judge.
(CA-97-1201)

Argued: February 29, 2000

Decided: March 27, 2000
Corrected Opinion Filed: April 10, 2000

Before WILKINS, WILLIAMS, and KING, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**THIS OPINION REPLACES THE ONE ISSUED ON
MARCH 27, 2000**

**COUNSEL**

**ARGUED:** Waldsee Merton Prunty, PRUNTY LAW OFFICES, Huntington, West Virginia, for Appellant. Kelly Mondy Young, LANE LAW FIRM, Charleston, West Virginia, for Appellee. **ON BRIEF:** Gordon C. Lane, LANE LAW FIRM, Charleston, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Pan-American Assurance Company (Pan-American) initiated an interpleader action, see Fed. R. Civ. P. 22, against Katrina Woodard, as Administratrix of the Estate of Roger Moore, and Judy Simmons, Moore's former wife, seeking to determine who between the estate and Ms. Simmons was rightfully entitled to the $100,000 life insurance proceeds from Roger Moore's insurance policy. The two defendant-claimants each filed motions for summary judgment. On March 31, 1999, the district court denied Ms. Simmons's motion and granted Ms. Woodard's motion for summary judgment, ruling that Mr. Moore's estate was entitled to the insurance proceeds. Ms. Simmons filed a timely appeal. For the reasons stated below, we affirm.

I.

In January 1985, while living in Kentucky, Roger J. Moore took out a life insurance policy with Pan-American Assurance Company in which he was named the insured. The policy had a face value of $50,000 with an additional accidental death benefit of $50,000. The named beneficiary under the policy was his then-wife Judy Moore (now Judy Simmons) and the policy listed the Moores as co-owners, although it also listed Judy Moore as the contingent owner.

Under the policy, only the owner or owners could change the beneficiary. The owner could change the beneficiary

> at any time during the Insured's lifetime unless otherwise provided in the previous designation. The new designation must be made by a signed notice in satisfactory form to [Pan-American's] Home Office. The change will take effect on the date the notice was signed subject to any action taken by [Pan-American] before recording the change.

(J.A. at 23.)

On March 27, 1992, the Moores, then residents of West Virginia, divorced in Cabell County, West Virginia. The property settlement agreement approved in the final divorce decree did not expressly mention the life insurance policy, but provided in relevant part:

> 9. In further and complete consideration and satisfaction of her interest in the marital property, [Judy Moore] shall receive the sum of FIFTY THOUSAND DOLLARS ($50,000).

> . . . .

> 14. Each party, except as hereinabove otherwise provided, hereby releases and discharges completely and forever the other from any and all rights of past, present, [and] future support and division of property, right of dower, right to act, benefits, or privileges accruing to either party by virtue of said marriage relationship or otherwise and whether the same are conferred by the Statutory Law or the Common Law of West Virginia or any other state, or of the United States.

(J.A. at 77.) Pan-American was apparently never informed of the Moores' divorce or the terms of the property settlement agreement.

After the Moores' divorce, Mr. Moore began to correspond with Pan-American in an effort to change the beneficiary under the policy

3

to help secure a loan from his bank. On September 18, 1992, Mr. Moore sent a letter to Pan-American that provided:"Please send the proper forms for me to change the beneficiary on this policy. I need to make the Inez Deposit Bank[,] Inez, Ky. the payee on this policy. Please attach this to my policy for the record if possible." (J.A. at 39.) In response to Mr. Moore's letter, Pan-American sent a change-of-beneficiary form to Judy Moore, rather than to Roger Moore, and the form included a signature line for Judy Moore as owner, but not for Roger Moore. By letter dated November 23, 1992, Roger Moore again sought to change the beneficiary under his policy. His letter of that date reads:

> To Whom It May Concern
>
> I am the sole owner of this policy and paid all the premiums for years. When [I] first took this policy I designated Judy L. Moore as beneficiary, now I am changing the beneficiary to Inez Deposit Bank, P.O. Box 365, Inez, Ky. 41224.
>
> I have contacted legal coun[sel] and have been advised that since I am the sole owner of this policy I don't have to get Judy or anyone else to sign anything in the state of West Virginia. Judy L. Moore is not the owner, she was the beneficiary.
>
> A speedy reply would be appreciated.

(J.A. at 45.) Along with his letter of November 23, 1992, Mr. Moore also returned the completed change-of-beneficiary form that Pan-American had sent to Judy Moore in September 1992. On that form, Mr. Moore signed his name on one of the witness lines (presumably because the signature line, which he left blank, indicated that Judy Moore was to sign there), wrote in Inez Deposit Bank on the line provided for "Assignee and/or Irrevocable Beneficiary," and provided the signature of a witness.[1]

_____

[1] It appears that Pan-American did not receive this letter and its attachments until December 30, 1992. Pan-American records also indicate that it sent another change-of-beneficiary form to the Moores on December 8, 1992, and on this form both Judy Moore and Roger Moore were listed as owners.

4

On January 11, 1993, Pan-American sent a letter addressed to both Judy and Roger Moore in which Pan-American informed the Moores that it was still awaiting receipt of the change-of-beneficiary form. The Moores responded to this letter by replying on the lower portion of the Pan-American letter, where they indicated that they had enclosed a completed change-of-beneficiary form. This reply was signed by Judy Moore, dated February 3, 1993, and contained a hand-written note from Roger Moore in which he asked Pan-American to "Please send me a copy of this policy showing Inez Deposit Bank as the new beneficiary." (J.A. at 55.) Instead of enclosing a completed change-of-beneficiary form, however, the Moores returned an "Assignment of Policy as Collateral Security" form completed by Judy Moore, assigning her interests in the policy to Inez Deposit Bank.[2]

On February 11, 1993, Pan-American sent the Moores another change-of-beneficiary form and a change-of-ownership form. On March 22, 1993, Pan-American sent the Moores a letter indicating that it was awaiting receipt of the applications for change of beneficiary and change of ownership. On April 26, 1993, Pan-American sent another letter in which it indicated that because it had not received the required documents to facilitate a change in the policy it was closing its files. On May 14, 1993, Roger Moore sent a letter to Pan-American in which he wrote:

> To Whom It May Concern
>
> I mailed another original to your company on 2-4-93, I can't understand why we are having such a hard time getting the beneficiary changed on this policy. I have another policy made to the Inez Deposit Bank, with this policy changed to them I will have enough coverage to cover my loan.
>
> Please help me get this taken care of. My banker is raising all kinds of hell for me to have enough insurance. If there is any problem please call me collect . . . .

---

[2] It is unclear how Judy Moore came to send back this completed assignment of collateral security form, but the most logical conclusion is that Pan-American had incorrectly sent the Moores this form rather than a change-of-beneficiary form in an earlier mailing.

(J.A. at 65.) On May 19, 1993, Pan-American sent the Moores a change-of-ownership form and an assignment form, but apparently not a change-of-beneficiary form. On June 22, 1993, Pan-American notified the Moores by letter that it had not received the change-of-ownership form or the assignment form. On July 25, 1993, Pan-American notified the Moores, again by letter, that, having not received the necessary documentation, it was closing its files.

Mr. Moore died intestate as a result of a drowning accident on May 20, 1997. Following Mr. Moore's death, Pan-American instituted an interpleader action in an effort to determine whether Mr. Moore's former wife, Judy Moore (now Judy Simmons), or his estate is properly entitled to Mr. Moore's insurance policy proceeds. Pan-American, which did not contest that it owed the insurance proceeds to either Mr. Moore's estate or his former wife, willingly put the money owed under the policy in the court's registry. Mr. Moore's estate has apparently satisfied all outstanding loan payments due to Inez Deposit Bank.

Both Ms. Simmons and Ms. Woodard, the defendant-claimants, filed motions for summary judgment. In ruling on Ms. Simmons's and Ms. Woodard's motions for summary judgment, the district court relied on Graham v. Graham, 465 S.E.2d 614, 617-18 (W. Va. 1995), in first determining that ownership of a life insurance policy is a marital property right in West Virginia. The court held that Mr. Moore received all ownership rights in the life insurance policy under the terms of the divorce property settlement agreement with his former wife. The court then ruled that Mr. Moore substantially complied with the requirements for changing the beneficiary to Inez Deposit Bank in satisfaction of both West Virginia and Kentucky law.[3] The court went on to hold that to the extent that Inez Deposit Bank was no longer owed any further payments from Mr. Moore's estate, the policy proceeds would pass to Mr. Moore's estate. The district court thus granted Ms. Woodard's motion for summary judgment and denied Ms. Simmons's motion. Ms. Simmons filed this appeal, in which she

_____

[3] The court analyzed the case under both West Virginia and Kentucky law in order to avoid resolving the "thorny issue" of which state's law rightfully applied under West Virginia choice-of-law rules. The parties assert no challenge in this regard.

6

asserts that Mr. Moore did not effectively change the beneficiary on the policy to Inez Deposit Bank and that she remains the proper beneficiary. She also contends that the district court improperly failed to apply the marshaling of assets doctrine.

II.

This Court reviews a grant of summary judgment de novo. See Halperin v. Abacus Tech. Corp., 128 F.3d 191, 196 (4th Cir. 1997). Summary judgment is appropriate if "`there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). In determining whether there is a genuine issue of material fact, the record is viewed in the light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

We have reviewed the record, briefs, and pertinent case law on this matter, and we have had the benefit of oral argument. Our careful de novo review persuades us that the rulings of the district court were correct. Accordingly, we affirm on the reasoning set forth in the district court's opinion. See Pan-American Assurance Co. v. Woodard, No. CA-97-1201-3 (S.D. W. Va. Mar. 30, 1999).

AFFIRMED